UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TELVIN VOSS,

                Plaintiff,

    v.                                Case No. 25-cv-1940-pp

RACINE CORRECTIONAL INSTITUTION
HEALTH STAFF UNIT, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 5), DENYING AS UNNECESSARY PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 11) AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Telvin Voss, who is incarcerated at the Wisconsin Resource Center and is representing himself, filed an amended complaint under 42 U.S.C. §1983, alleging that the defendants had violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 5, and screens his amended complaint, dkt. no. 10.

The plaintiff filed a motion for leave to file an amended complaint, along with his proposed amended complaint. Dkt. Nos. 10, 11. The plaintiff did not need to file a motion for leave to amend because the Federal Rules of Civil Procedure allow a party to file an amended complaint once as a matter of course within twenty-one days after service of a responsive pleading. See Fed. R. Civ. P. 15(a)(1)(B). Because the court had not yet screened the original complaint or ordered it served on the defendants, no responsive pleading has been filed, so the plaintiff's proposed amended complaint automatically becomes the operative complaint. Because the plaintiff did not have to seek

1

leave of the court to amend his complaint, the court will deny his as unnecessary.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 5)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 7, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $12.97. Dkt. No. 9. The court received that fee on January 29, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case

2

under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. <u>D.S. v. E. Porter Cnty. Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff was confined at Racine Correctional Institution during the events described in the complaint. He sues Racine Correctional Institution Health Staff Unit, Justin Ribault (who is a doctor at Racine) and Amy Lamar, a registered nurse at Racine. Dkt. No. 1 at pp. 1-3.

The plaintiff alleges that at the end of 2024, he started experiencing "diabetic complications," such as waking up with the shakes that wouldn't stop until he ate something, "repeatedly peeing" and nausea. Id. at ¶10. He says that he wrote to HSU (health services unit) staff about his issues and that Ribault scheduled him for lab testing. Id. The plaintiff states that on February 28, 2025, he started on his "quest" to request the results of his blood test while looking for someone to talk to about the issue. Id. at ¶11.

The plaintiff alleges that on May 5, 2025, a progressive note was sent to Ribault regarding the plaintiff's concerns about his diabetic complications. Id. at ¶12. That same day, the plaintiff allegedly saw Ribault, who ordered more labs but did not treat the plaintiff. Id. at ¶13. The plaintiff states that he had lab testing on May 8, 2025. Id. at ¶14. Ten days later, on May 18, 2025, the plaintiff allegedly underwent more lab testing. Id. at ¶15. He states that his hemoglobin results for the tests were 5.8 and 6.3, and that the report classified the results as high. Id. The plaintiff says that per Aurora West Allis Medical Center, his labs "were within an increased risk and should have been diabetic controlled[.]" Id. He says that at that time he did not know about his lab results because nobody told him. Id.

The plaintiff alleges that on June 10, 2025, he wrote to the HSU requesting his lab results. Id. at ¶16. The next day, Nurse Lamar allegedly sent the plaintiff a response letter stating, "Your labs were overall unremarkable. Make sure you exercise and eat healthy." Id. at ¶17. The plaintiff states that Lamar's message was misleading considering that his A1C result at that time was 6.3. Id. at ¶18. Lamar allegedly failed to disclose the results to the plaintiff even though he had requested the information. Id. That same day, Lamar allegedly wrote to Ribault that the plaintiff had requested his lab results and to

"[p]lease send him a letter." Id. at ¶19. The plaintiff states that he did not receive his lab results or any treatment. Id. at ¶20.

The plaintiff alleges that on June 18, 2025, while visiting the HSU for an unrelated issue, a staff member reviewed the plaintiff's records and asked him if he knew that his A1C level was 6.3. Id. at ¶21. The staff member allegedly told the plaintiff that he would tell Ribault the plaintiff would like to discuss this with him. Id. The plaintiff states that Ribault responded to the staff member's message, but "deliberately went around the relevant high lab analysis that he knew about three months ago." Id. at ¶¶22-23.

The plaintiff alleges that on June 18, 2025, Nurse Cindy Streets (not a defendant) was dispatched to the Oz unit for a possible diabetic episode after another incarcerated individual found the plaintiff on the floor shaking. Id. at ¶25. The plaintiff states that an officer assisted him to a chair and asked the plaintiff what was wrong; he responded that he thought it was related to his diabetes. Id. The officer allegedly gave the plaintiff an orange to eat. Id. The plaintiff says Nurse Streets reported that upon entering the plaintiff's cell, he was sitting in his chair shaking while trying to consume a piece of fruit, was slow to her commands and seemed nauseated. Id. The plaintiff allegedly was transferred to a health unit for examination and then transferred to a treatment room where he received fluid via an IV. Id.

The plaintiff alleges that two days later, on June 20, 2025, his lab results were returned indicating that he was overly dehydrated and that his A1C level was 6.1, which classified him as being at an increased risk for diabetic complications. Id. at ¶26. He says that even after this critical event, he did not hear anything from Ribault. Id. at ¶27.

5

The plaintiff alleges that about five months later, on November 13, 2025, he saw Ribault. Id. at ¶28. Ribault allegedly ordered more lab testing, but he offered no diagnosis and rendered no treatment. Id. The plaintiff states that the labs taken that day showed a level of 5.7 which classified the plaintiff as "moderate high." Id.

The plaintiff states that in 2025, Ribault ordered five labs, and that they all showed that the plaintiff was at an increased risk of diabetes. Id. at ¶30. He states that Ribault was told that the plaintiff wanted to know his test results and about his symptoms, but the plaintiff left Racine without ever obtaining treatment for his diabetic/pre-diabetic needs. Id.

The plaintiff states that the medical incident on June 18, 2025 may have been a diabetic coma resulting from Ribault's failure to address the plaintiff's medical needs. Id. at ¶34. The plaintiff claims that Ribault violated his rights under the Eighth Amendment and Wisconsin state law. Id. at ¶¶35-49. The plaintiff alleges that Lamar acted with deliberate indifference in violation of the Eighth Amendment when she wrote her response letter misleading him about his lab results. Id. at ¶51. For relief, the plaintiff seeks compensatory and punitive damages. Id. at p. 12.

C.     Analysis

Before turning to the complaint's substantive allegations, the court observes that the plaintiff named as a defendant Racine Correctional Institution Health Staff Unit. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. §1983." Johnson v. Supreme Court of Ill., 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." Andreola v. Wisconsin, 171 F. App'x 514, 515 (7th Cir. 2006). Racine

6

Correctional Institution is one of several institutions within the Department of Corrections, and the "Health Staff Unit" presumably is a department at Racine Correctional. Because it is not a "person" subject to suit under §1983, the court will dismiss "Racine Correctional Institution Health Staff Unit."

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, a plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

Diabetes is a serious medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). The plaintiff's alleged diagnosis and the physical harm that he says resulted or will result from that diagnosis "constitute[] a serious medical condition under the objective deliberate indifference to medical needs factor." Maya v. Ill. Dep't of Corr., Case No. 17-CV-0546, 2017 WL

3491961, at *6 (S.D. Ill. Aug. 14, 2017). The court finds that these allegations satisfy the objective component of a deliberate indifference claim.

The plaintiff may proceed on an Eighth Amendment claim against Ribault based on allegations that Ribault failed to inform him of or treat his pre-diabetes for a year resulting in a diabetic coma. The court will exercise supplemental jurisdiction over a state law medical malpractice claim against Ribault. See 28 U.S.C. §1367(a).

Regarding Lamar, the plaintiff alleges that her response to his request for lab results was misleading because she said the results were "unremarkable" and told him to exercise and eat healthy. Lamar's alleged misleading response to the plaintiff's request for his records does not state a plausible claim for deliberate indifference because the plaintiff also alleges that Lamar messaged Ribault that the plaintiff wanted his lab results and to please send him a letter. The plaintiff has not stated a plausible claim that Lamar disregarded a substantial risk to his health. The court will dismiss Lamar.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 5.

The court **DENIES AS UNNECESSARY** the plaintiff's motion to amend complaint. Dkt. No. 11. The amended complaint at Dkt. No. 10 is the operative complaint.

The court **DISMISSES** defendants Racine Correctional Institution Health Staff Unit and Amy Lamar.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for

service on defendant Justin Ribault. Under the informal service agreement, the court **ORDERS** defendant Ribault to file a responsive pleading to the amended complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$337.03** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Director of the Wisconsin Resource Center, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 21st day of May, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

10